FILED
U.S. DISTRICT COURT
DISTRICT OF NEBRASKA

2018 SEP 17  PM 4: 14

OFFICE OF THE CLERK

Pro Se 15 (Rev. 12/16) Complaint for Violation of Civil Rights (Non-Prisoner)

# UNITED STATES DISTRICT COURT

for the

District of Nebraska

| ___ | Division |
|---|---|

| | |
|---|---|
| Warren D. Crozier and Paula M. Crozier, Parents of Minor Child A.C. | Case No. 8:18CV438 |
| *Plaintiff(s)* | *(to be filled in by the Clerk's Office)* |
| *(Write the full name of each plaintiff who is filing this complaint. If the names of all the plaintiffs cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)* | |
| -v- | Jury Trial: *(check one)*   X Yes ☐ No |
| Westside Community Schools District, Omaha, Ne | |
| Westside Middle School, Omaha, NE | |
| Elizabeth Meyers, English Teacher | |
| Russ Olsen, Principal Westside Middle School | |
| Enid Schonewise, Assistant Superintendent | |
| Blane McCann, Superintendent | |
| *Defendant(s)* | |
| *(Write the full name of each defendant who is being sued. If the names of all the defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names. Do not include addresses here.)* | |

## COMPLAINT FOR VIOLATION OF CIVIL RIGHTS

(Non-Prisoner Complaint)

---

### NOTICE

Federal Rules of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to electronic court files. Under this rule, papers filed with the court should *not* contain: an

---

1

individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number.

Except as noted in this form, plaintiff need not send exhibits, affidavits, grievance or witness statements, or any other materials to the Clerk's Office with this complaint.

In order for your complaint to be filed, it must be accompanied by the filing fee or an application to proceed in forma pauperis.

## I.    The Parties to This Complaint

### A.    The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

| | |
|---|---|
| Name | Warren Crozier & Paula Crozier on behalf of minor A.C. |
| Address | 905 S 42nd Street |
| | Omaha                    NE          68105 |
| | *City*                    *State*      *Zip Code* |
| County | Douglas |
| Telephone Number | 402-709-6169,  402-709-8930 |
| E-Mail Address | paulamcrozier@yahoo.com |

### B.    The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title (if known) and check whether you are bringing this complaint against them in their individual capacity or official capacity, or both. Attach additional pages if needed.

Defendant No. 1

| | |
|---|---|
| Name | Westside Community School District  Westside Middle School |
| Job or Title *(if known)* | Westside Community School  909 S. 76th Street |
| Address | Westside Middle School   8601 Arbor Street |
| | Omaha                    NE          68114 |
| | *City*                    *State*      *Zip Code* |

| | |
|---|---|
| County | Douglas |
| Telephone Number | 402-390-6464, 402-390-2100 |
| E-Mail Address *(if known)* | |

☐ Individual capacity          X  Official capacity

Defendant No. 2

| | |
|---|---|
| Name | Elizabeth Meyers |
| Job or Title *(if known)* | English Teacher<br>Westside Middle School |
| Address | 8601 Arbor Street |

| | | |
|---|---|---|
| Omaha | NE | 68124 |
| *City* | *State* | *Zip Code* |

| | |
|---|---|
| County | Douglas |
| Telephone Number | 402-390-6464 |
| E-Mail Address *(if known)* | meyers.elizabeth@westside66.net |

X  Individual capacity          X  Official capacity

Defendant No. 3

| | |
|---|---|
| Name | Russell Olsen |
| Job or Title *(if known)* | Principal<br>Westside Middle School |
| Address | 8601 Arbor Street |

| | | |
|---|---|---|
| Omaha | NE | 68124 |
| *City* | *State* | *Zip Code* |

| | |
|---|---|
| County | Douglas |
| Telephone Number | 402-390-6464 |
| E-Mail Address *(if known)* | olsen.russell@westside66.netf |

☐ Individual capacity          X  Official capacity

Defendant No. 4

| | |
|---|---|
| Name | Enid Schonewise |
| Job or Title *(if known)* | Assistant Superintendent |

3

|  | Westside Community School District | | |
|---|---|---|---|
| Address | 909 S. 76th Street | | |
|  | Omaha | NE | 68124 |
|  | *City* | | |
| County | Douglas | | |
| Telephone Number | 402-390-2100 | | |
| E-Mail Address *(if known)* | schonewise.enid@westside66.net | | |
|  | ☐ Individual capacity | X Official capacity | |

Defendant No. 5

| Name | Blane McCann | | |
|---|---|---|---|
| Job or Title *(if known)* | Superintendent<br>Westside Community School District | | |
| Address | 909 S. 76th Street | | |
|  | Omaha | NE | 68124 |
|  | *City* | *State* | *Zip Code* |
| County | Douglas | | |
| E-Mail Address *(if known)* |  | | |
|  | ☐ Individual capacity | X Official capacity | |

## II.   Basis for Jurisdiction

Under 42 U.S.C. § 1983, you may sue state or local officials for the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." Under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971)*, you may sue federal officials for the violation of certain constitutional rights.

A.   Are you bringing suit against *(check all that apply)*:

☐ Federal Official (a *Bivens* claim)

X-State or Local officials (a § 1983 claim)

| | | | |
|---|---|---|---|
| | Westside Community School District | | |
| Address | 909 S. 76th Street | | |
| | Omaha | NE | 68124 |
| | City | | |
| County | Douglas | | |
| Telephone Number | 402-390-2100 | | |
| E-Mail Address *(if known)* | schonewise.enid@westside66.net | | |
| | ☐ Individual capacity | X Official capacity | |

Defendant No. 5

| | | | |
|---|---|---|---|
| Name | Blane McCann | | |
| Job or Title *(if known)* | Superintendent Westside Community School District | | |
| Address | 909 S. 76th Street | | |
| | Omaha | NE | 68124 |
| | City | State | Zip Code |
| County | Douglas | | |
| E-Mail Address *(if known)* | | | |
| | ☐ Individual capacity | X Official capacity | |

## II.    Basis for Jurisdiction

Under 42 U.S.C. § 1983, you may sue state or local officials for the "deprivation of any rights, privileg immunities secured by the Constitution and [federal laws]." Under *Bivens v. Six Unknown Named Age Federal Bureau of Narcotics, 403 U.S. 388 (1971)*, you may sue federal officials for the violation of ce constitutional rights.

A.    Are you bringing suit against *(check all that apply)*:

☐ Federal Official (a *Bivens* claim)

X-State or Local officials (a § 1983 claim)

B.      Section 1983 allows claims alleging the "deprivation of any rights, privileges, or immunities secured b
the Constitution and [federal laws]." 42 U.S.C. § 1983. If you are suing under section 1983, what
federal constitutional or statutory right(s) do you claim is/are being violated by state or local
officials?

Defendants violated Plaintiff A.C.'s.1st amendment right to free speech and furthermore Defendants
violated Plaintiff A.C.'s 14th Amendment rights to equal protection under the law.

This case raises questions under the First Amendment and 14th Amendment and 42 U.S.C. § 1983.
Court has jurisdiction over all claims for relief pursuant to 28 U.S.C. § 1331.. Venue is proper under
U.S.C. § 1391(b).

C.      Plaintiffs suing under *Bivens* may only recover for the violation of certain constitutional
rights. If you re suing under *Bivens*, what constitutional right(s) do you claim is/are being violated
by federal officials?

---

D. Section 1983 allows defendants to be found liable only when they have acted "under color of any
statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia."
42 U.S.C. § 1983. If you are suing under section 1983, explain how each defendant acted under color
of state or local law. If you are suing under *Bivens*, explain how each defendant acted under color of
federal law. Attach additional pages if needed.

1.   Elizabeth Meyers, 8th grade English Teacher, Westside Middle School, Omaha, NE

a. According to school, Nebraska state and federal statutes and laws, on October 3,
2016 Elizabeth Meyers acting under color of law, admitted to purposefully and
willfully, violating A.C.'s free speech by silencing and "cutting off" Plaintiff A.C. as
A.C. was asking questions during a critical thinking assignment. The assigned topic
was about athletes who choose to kneel during the national anthem and what causes
them to do so?

Meyers violated A.C.'s Constitutional 1st Amendment right to free speech by
demanding A.C. stop speaking,  Notably, A.C. was formulating ideas, asking
questions and A.C.'s commentary didn't promote any illegal activity, wasn't obscene,
profane or vulgar and did not disrupt or materially interfere with the work of the
school or classmates' rights.  Classmates agreed with A.C.'s commentary.
Furthermore A.C. approached Meyers after class about an assignment that was
previously submitted and Meyers didn't discuss anything regarding the class
conversation, nor did Meyers communicate anything to her superiors or the Croziers
about anything about the class.  Defendant's censorship of Plaintiff's speech
infringers her First Amendment rights to express political speech.

b. According to school, Nebraska state and federal statutes and laws, on October 4, 2016, Elizabeth Meyers again acting under color of law, purposefully and willfully violated A.C.'s Constitutional 14th amendment rights. Meyers was fully aware that A.C. was absent from school at home ill. Meyers took that opportunity to smear and slander A.C.'s excellent reputation and character to the students in every class period.  Meyers lied to intentionally defame and label A.C. as a "racist who says the N-word" thus inflicting emotional distress, decimating A.C.'s reputation and placing A.C. in direct harm and danger at school, which violates A.C.'s civil rights to equal protection.

c. To add insult to injury, literally, Meyers fully admitted to both counts of civil rights violations to A.C. and A.C.'s parents during conferences on 10/4/16.  Meyers admitted to silencing A.C. mid-sentence during class on 10/3/16 as well as defaming and decimating A.C.'s reputation in classes on 10/4/16.  When Paula Crozier confronted Meyers and stated, "It is entirely unfair that you labeled A.C. a racist," Meyers rolled her eyes and smugly responded, "I do not believe that to be unfair."

2. Russell Olsen, Principal, Westside Middle School, Omaha, Ne.

Defendant Olsen acting under color of state law violated Plaintiff A.C.'s 14th Amendment rights as equal protection under the law by negligence.  Olsen, as Principal, is bound by the policies, regulations and laws of Westside School District, Nebraska Department of Education as well as federal laws to correctly staff, train and supervise curriculum and day to day operations and teaching in the school. Olsen is responsible for implementing and enforcing the District's and the School's policies.   By only offering untimely, minimal and inadequate tactics which did nothing to alleviate and eradicate Meyers' blatant willful and abusive violations, Olsen contributed to further emotional distress and negligence surrounding the civil rights and protection of A.C.

a. Olsen conducted an investigation at the Crozier's request and discovered that Meyers had indeed perpetrated both civil rights violations against A.C., and Olsen stated that Meyers' infringements and actions were "egregious, wrong and shouldn't have happened." Olsen denied the Plaintiff's repeated requests for Meyers to apologize to A.C. and to all the students/classes Meyers taught, which would have rectified the situation. Instead, Olsen insisted upon only speaking directly to a few students A.C. named as friends who now ostracized and harassed A.C. because of Meyers. Olsen refused to discuss with the Croziers the contents and topics of discussion with these students and Olsen refused to speak to Meyers' classes to rectify the situation.  Olsen moved A.C. to a different English class upon the insistence of the Croziers.

b. By denying the Crozier's repeated requests for a formal apology to wholly rectify the situation, Olsen escalated the injustice A.C. had to endure. The Croziers repeatedly requested a written apology from Meyers, Olsen and the school; anything that A.C. could produce to prove to anyone at anytime anywhere that Meyers actions were

"egregious, wrong and shouldn't have happened" as both Olsen and Schonewise stated. The Croziers were denied their multiple requests. Olsen's only advice and direction was for A.C. to leave her classrooms when she felt ostracized and harassed. This advisement led to A.C.'s further harassment and social exclusion, increased emotional distress, denied A.C. of learning, kept A.C. behind in school and continued violating A.C.'s 14th amendment rights to equal protection.

c. Despite the Crozier's continued insistence that Meyers' violations and defamation against A.C. would be life long and that there is permanent damage perpetrated upon A.C., Olsen and Schonewise both opined that this would "blow over" and that "middle school kids are fickle and this 'event' would be 'old news' in less than a week or two."   To this day, the Defendants have done nothing to alleviate, correct or rectify the violations and the Defendants remain negligent in the injuries the Defendants inflicted upon A.C.

d. Olsen agreed that the curriculum topics covered in Meyers' class on 10/3 and 10/4/16 were inappropriate, "out of line" and that Meyers' entire curriculum would be stringently reviewed. Both Olsen and Schonewise stated the school was "Sorry and apologizes" but that they didn't have "control over Meyers" or to make teachers apologize in writing, (nevertheless Olsen admitted to student discipline included students writing apologies.) Olsen advised A.C. to "leave the class" if the teacher or students harassed A.C., which only continued to victimize A.C. and continue the hostile school environment A.C. faced daily.

e. Additionally, in regards to Meyers' curriculum review Olsen and Schonewise both stated they would "investigate" and take "disciplinary actions" which apparently never happened because by February 2017, the Croziers learned that the class topics continued to be sexually or violently inappropriate, obscene, anti-police and politically slanted. Olsen additionally told a different student in Meyers' class that if the student disagreed with what Meyers' was teaching then the student should leave (just as he directed A.C. to do) and wait in the hallway until class was over. Therefore, Principal Olsen allowed Meyers and the school to remain negligent not only in violating A.C.'s rights but clearly also at least one other student's rights if not more students.


3. Dr. Enid Schonewise, Assistant Superintendent, Westside Community School District, Omaha, NE

Dr. Schonewises' role as Assistant Superintendent is to oversee the correct policies and regulatory compliances are executed as to the laws of Nebraska through the statutes of the Nebraska Department of Education.  Additionally Schonewise is to correct deficiencies, discipline and evaluate performance and to ensure the school is a safe environment for students.

a. Schonewise although apologizing for the actions of Meyers, refused to require Meyers apologize to A.C. both verbally and/or in writing or to all the classes Meyers' defamed A.C. to. Schoenwise promised to "discipline" Meyers, but refused to discuss what that entailed. Schonewise's empty promises and passive attitude that "this will blow over" negated the Crozier's insistence that Meyer's defamation destroyed their

daughter's credibility and reputation permanently not only at Westside Middle School but would also follow A.C into the Westside High School and throughout A.C.'s life. The Croziers cited the permanence of internet, social media, and personal injury and yet the Defendants' willful and negligent continued infliction creates constant worry for their daughter.

b. Schonewise, acting under color of law, offered zero solutions to discipline or reprimand Meyers for violating A.C.'s civil rights. Schonewise refused to speak to Meyers' students and explain that Meyers' comments were negligent and incorrect, thus exacerbating the injuries to A.C. and furthering the school's negligence.

c. Schonewise agreed to review the curriculum topics Meyers was teaching and again, in February 2017 it was discovered that nothing had changed as it was discovered Meyers had continue to assign 13 and 14 year olds topics such as "A on-duty crooked cop runs away with a naked woman". Schonewise's inaction and indifference to the permanence of the negligence furthered A.C.'s injuries and created a hostile school environment.

4. Dr. Blane McCann, Superintendent, Westside Community School District, Omaha, Ne

a. McCann is the Superintendent of Westside Community School District. As Superintendent, McCann has the primary role of ensuring correct execution and delivery of all local, state and federal education statutes and laws pertaining to the protection and education of the districts students as well as the direct oversight of all employees in the district including administration and teachers.

b. The Croziers left several telephonic and in-person requests for Dr. McCann to cooperate for a solution to his employee's issues. He avoided and declined all attempts at communication and therefore was derelict in his duties as a state employee. McCann's total indifference has furthered the claims for negligence, furthered emotional and physical distress for A.C., and violates A.C.'s right to equal protection through a hostile school environment.

5. Westside Community School District, et. al.:

Westside Community School District and its employees ignored the Crozier's request for active participation in eradicating the civil rights violations perpetrated by the school. The Crozier's Tort Claim submission presented to the School Board for addressing and rectifying the issue went entirely unanswered and ignored. By ignoring the claim, choosing to not communicate or offer solutions, Westside Community School District is also extremely negligent to A.C. and created great harm both in physical and emotional injuries to A.C.which are permanent and lifelong.

### III.   Statement of Claim

State as briefly as possible the facts of your case.  Describe how each defendant was personally involved in the
alleged wrongful action, along with the dates and locations of all relevant events.  You may wish to include
further details such as the names of other persons involved in the events giving rise to your claims.  Do not cite
any cases or statutes.  If more than one claim is asserted, number each claim and write a short and plain
statement of each claim in a separate paragraph.  Attach additional pages if needed.

A.   Where did the events giving rise to your claim(s) occur?

A.C.'s civil rights were violated inside Elizabeth Meyers 8th grade English classes on

Monday 10/3/16 and Tuesday 10/4/16 at Westside Middle School. Additionally, furthering the civil

rights violations under negligence, the events continued to occur throughout the 2016-2017

school year and continue in the community to date.

B.   What date and approximate time did the events giving rise to your claim(s) occur?

A.C.'s civil rights were violated inside Elizabeth Meyers 8th grade English classes on

Monday 10/3/16 during 4th period and Tuesday 10/4/16 all school day at Westside Middle School.

Additionally, furthering the civil rights violations under negligence, the events continued to occur

throughout the 2016-2017 school year and continue in the community to date.

C.   What are the facts underlying your claim(s)?  *(For example:  What happened to you?  Who did what?
Was anyone else involved?  Who else saw what happened?)*

This is a First Amendment challenge to Westside Middle School's suppression of a

student's political speech based on one teachers' contradictory political views and alleged

discomfort with the ideas and message that Plaintiff attempted to convey.

9

1. Westside Middle School is located at 8601 Arbor Street, Omaha, NE., 68124 and enrolls students residing in the Westside Community School District. Westside Middle School is the only middle school in Westside's district.

2. At the time of the incidents, the Croziers resided at 1825 Robertson Drive Omaha, NE, and in the Westside Community School District, and additionally had both A.C. and J.C. enrolled throughout elementary school in the Westside Community School District.

3. A.C.'s 1st Amendment right to free speech was violated by Elizabeth Meyers, 8th Grade English teacher, and occurred on Monday 10/3/16 during 4th period English Class.

4. The 14th Amendment violation of equal protection under the law, began on Tuesday 10/4/16 and progressed through school administrator negligence through October 31, 2016 and continues currently.

5. The Croziers had enrolled both A.C. and her sister J.C., with Down syndrome, at Westside Middle School.

6. Elizabeth Meyers is an 8th Grade English Teacher at Westside Middle School. A.C. was enrolled in Meyers' 4th period class.

7. The 2016-2017 school year began on or around August 14, 2016 and at that time, a heated presidential campaign was in process.

8. Elizabeth Meyers is very vocal to her students as well as online in social media as a devout Liberal and Left-wing "activist". At the time of this incident, Meyers frequently voiced her personal opinions against electing then candidate Donald Trump (President Trump) in the upcoming elections and was known to have called him a "Cheeto" to her students.

9. Meyers 8th grade English curriculum flyer foreshadowed Meyers' political views and how Meyers viewed the upcoming year as one to discuss Social Justice through literature. Ms. Meyers' flyer includes political statements and questions such as "What makes something unfair?", "Whose

responsibility is it to prevent/deal with unfairness in the world?", "Why do some people abuse power?" and "How do you keep your humanity when faced with unspeakable evil?" as opposed to, "How do we think critically to defend our opinions based on the literary works we are reading?"

10. Meyers' stated that her classroom was a "Safe Space" in which to share ideas and even had a sign on her classroom door stating "Safe Space" indicating the classroom was friendly and safe.

11. Examples of assigned work in Meyers' 8th grade English class (students of 13 and 14 years of age) covered topics such as, "Describe a Murder" and "Two Truths and A Lie", current political debates, the KKK, people's choice of religion and "A Naked Woman runs off with an on-duty Crooked Cop".  Clearly these topics were politically charged and frankly void of literary value.

12. Furthermore, Westside High School's weekly newspaper printed an article in which Eric Sayre, a high school English teacher, called out Meyers' curriculum choices as lacking for challenging students in reading literature. Meyers was instrumental in removing Shakespeare from the 8th grade English classes in exchange for adding another politically charged, anti-law enforcement book about a police interrogator whose talents lie in extracting confessions from a boy accused of murder, called The Rag and Bone Shop. Quoting Westside School's English instructor, Eric Sayres, "My biggest fear is that the common trend in public education and in English courses right now is to go to the high-interest literature. Of course kids want to read that (in referring to Meyers' book choice, The Rag and Bone Shop) but at what point in time do we worry about not having enough literature that pushes students to a higher reading level?"

13.  On Monday 10/3/16, in 4th period, Meyers presented a video news story on "Athletes kneeling during the National Anthem."  Meyers discussed how kneeling was an act of protest in support of the Black Lives Matter Movement, against those in law enforcement.  Meyers also stated that white people had said, "They (athletes) should be hanged by the flagpole."  Meyers assigned students to watch this video and comment on their views and why or why not athletes were

kneeling.

14. During the week prior to this class assignment, 9/21/16, the residents of Charlotte, NC were subjected to violent race riots that were spurred by the shooting of an unarmed black man by a police officer. These incidents sparked national concern for safety measures and had many including Nebraska's own Governor questioning the athletes' protest.

15. Upon finishing the video, Meyers called on A.C. to share her ideas. A.C. declined and asked Meyers to call on someone else. Meyers insisted A.C. answer.

16. A.C., a 13 year old at the time, formulating ideas and questions, shared that the kneeling was disrespectful to law enforcement and military, and questioned that this violence could have stemmed from music lyrics that said such things as "F-the Police, and the use of the N-word." (as the racial slur, but note that A.C. did NOT use the curse words, but as the 'F-word' and 'N-word' respectively). Meyers demanded where A.C. had gotten this information, and A.C. answered "from the media."

17. A.C. then to explain further, shared an example of her previous school year during 7th grade lunchtime where she overheard two students, one white and one black, where the white student asked why he couldn't say the N-word if the black student could. At this point Meyers interrupted A.C. and demanded A.C. stop speaking. A.C. stated she wasn't finished and needed to explain further, and Meyers forbade A.C. to finish, thus violating A.C's right to free speech. This is unconstitutional. The First Amendment protects students' right to speak on political or societal issues—including the right to express what school officials may consider uncomfortable. unpopular or controversial opinions, or viewpoints that might make other students uncomfortable

18. A.C. would have continued her opinion that the use of the N-word should not be said by anyone, but A.C. was not allowed that opportunity. Clearly, Meyers was slighted by A.C.'s commentary, however, it must be noted that other classmates agreed with A.C. and that Meyers continued through the remainder of the class without any disruption, distress or interruption.

19. In demanding A.C. stop speaking, Meyers violated A.C.'s 1st Amendment right to free speech. It must be noted that A.C. was formulating ideas, asking questions and A.C.'s commentary didn't promote illegal activity, wasn't obscene, profane or vulgar and did not substantially disrupt or materially interfere with the work of the school or classmates' rights. There was no upset in class, and classmates agreed with the commentary. Furthermore A.C. spoke with Meyers after class and Meyers did not bring up anything about A.C.'s contribution in class, but rather, A.C. questioned when a previously turned in assignment would be graded. Because Defendants have censored Plaintiff's speech commenting on an important political and societal issue, without any threat of a substantial disruption, the Defendants have violated her First Amendment rights.

20. For almost 50 years, our Supreme Court has upheld that students do not "shed their constitutional rights to freedom of speech or expression at the schoolhouse gate." Tinker v. Des Moines Indep. Cmty. Sch. Dist., 393 U.S. 503, 506 (1969).  In Tinker, the Court instructed that school officials may not suppress student speech based on the "mere desire to avoid the discomfort and unpleasantness that always accompany an unpopular viewpoint" or "an urgent wish to avoid the controversy which might result from the expression."

21. Meyers did not communicate anything the to Dean, Principal Olsen or Superintendents and/or administrative superiors that day.   Meyers didn't contact A.C's parents regarding any of the class events throughout the school day and into the next morning until Meyers wrote an email to Mrs. Crozier.

22. On the morning of Tuesday, 10/4/16, A.C. woke up not feeling well and stayed home from school.  The Croziers called the school before classes started and reported A.C.'s absence due to illness and fever.

23. At 9:56a.m. on Tuesday 10/4/16, Plaintiff Paula Crozier received an upsetting email from Meyers stating that A.C. had to be "cut off" in yesterday's class because the information A.C. shared took a "dicey turn" when A.C. made statements "generalizing blacks."  Meyers stated in the email that

the Croziers could speak to Meyers about it after school at parent teacher conferences.

24. After reading the email, Paula Crozier contacted her husband as well as texted A.C. who was resting at home. Plaintiff Warren Crozier was unaware of any incident at school and would speak to A.C. about it.

25. A.C. began receiving texts from students at about noon on Tuesday 10/4/16 with questions about A.C. being suspended for (sic) "What you done" "And I know for a fact what happened in the class", "Your teacher told all the other classes what you said, not what you (sic) anime but what you said" and "I don't think the teacher would lie and tell all the classes something (sic) in true."

26. With these social media texts and messages coming from angry students, although still sick, A.C. insisted on joining her parents at parent teacher conferences to face Meyers and confront Meyers about what Meyers said to classes that day about A.C. Even walking into the school, A.C. was accosted by students with taunts of "A.C.- we heard what you said". These accusations caused A.C. great fear and emotional distress. On 10/4/16 at approximately 5pm, the Plaintiffs sat down with Meyers to discuss Meyers' actions; not only those on 10/3/16 but also the 14th amendment violations stemming from Meyers' choice to defame A.C. to the class period. A.C. wanted answers as to why her teacher would intentionally defame and lie about A.C. She wanted Meyers to know that A.C. was already fearful and angry about how Meyers placed A.C. in direct physical harm especially in light of the current racial tension and rioting across the country.

27. Meyers admitted not being trained in political science, conflict resolution, or racial diversity education, and admitted to violating A.C.'s right to speech in class the day prior. Meyers attempted to state she had tried to call the Plaintiffs, and didn't know the number, but also admitted to not leaving a message. Meyers admitted to not knowing A.C. well enough to make judgments about A.C., but when confronted by Plaintiff who stated, "It is entirely unfair that you

label A.C. a racist!" Meyers rolled her eyes and smugly answered, "I do not believe it to be unfair." This alone provides enough evidence that Meyers willfully and with malice placed A.C.'s protection and safety in great harm and strictly didn't care about any of the repercussions under A.C.'s 14th amendment rights.  Defendant's suppression of A.C.'s speech offends constitutional standards.

28. It is not in dispute that Meyers took zero actions in alerting any administration regarding the class on 10/3/16.   This is proven as the Dean as well as the Principal both were surprised by the confrontation at conferences from the Croziers about Meyers' behavior and civil rights violations. Dean McGuire stated that she wanted to have a formal meeting after they "got their ducks in a row" (clearly not offered to A.C. when she was absent and unable to defend herself) and that Russell Olsen had no knowledge of any incidents or disruptions regarding 10/3 or 10/4/16.

29. Considering that the confrontation with Meyers and the Plaintiffs was during parent teacher conferences on 10/4/16, Russ Olsen, Principal, and Warren Crozier agreed to speak first thing Wednesday 10/5/16.

30. On 10/5/16, Plaintiff Warren Crozier and Defendant Russell Olsen spoke by phone and Olsen promised to investigate the Meyers' civil rights violations and to call Warren back.  Mr. Crozier explained that A.C. would not return to school because the Crozier's feared for A.C.'s safety and Olsen agreed.

31. On 10/6/16, Thursday, A.C. was to attend a confirmation retreat with her church; however, upon arriving for the bus and noticing other school students in attendance, A.C. became quite upset and anxious and fearful of reprisal from Meyers' violations and did not attend.  Meyers not only violated A.C.'s rights in school, but the defamation Meyers caused A.C., now caused such great anxiety that A.C. missed out on religious education and an important sacrament, and in effect, Meyers additionally violated A.C.'s right to freedom of religion.

32. On 10/7/16, Olsen called Warren and discussed that the investigation was just about complete

15

and that Olsen would be ready to discuss it on Monday 10/10/16 in the hopes A.C. could return to school.  During this call, Plaintiff Warren Crozier again reiterated that he did not believe school to be safe for A.C. and was incredibly fearful for A.C.'s safety because of Meyers.

33. On 10/10/16, the Croziers including A.C., met with Olsen who had completed part of the investigation.  Olsen apologized stating that what Meyers did to A.C. was "Wrong, egregious and shouldn't have happened."  Olsen also stated that Meyers' curriculum topic choices were "inappropriate for 8th graders and would have been accomplished better had they compared vanilla to chocolate ice cream."  Olsen insisted that Meyers was apologetic although he wouldn't make her apologize.  Olsen also stated that what Meyers did to A.C. was "unfair and wrong as I only know A.C. to be of good character and one with many diverse friends." (sic.. previous friends, as each of A.C.'s friends immediately cut her off or began ostracizing her because of the lies Meyers told about A.C.)

34. At the Croziers' insistence, A.C. was moved to another English class.  Olsen was confident that this "would blow over" and to give it a couple of weeks to allow for "middle schoolers to move on as they do" even though the Croziers insisted that this was a critically violent and abusive act and that these violations would follow A.C. into high school and beyond and would be lifelong. However, the Croziers remained hopeful.

35. On 10/11/16, the Croziers again met with Olsen as it had come to their attention from their daughter A.C., the true extent of Meyers' violations of A.C's 1st and 14th amendment rights. Olsen, although had stated he had investigated Meyers' acts and admitted her egregious culpability, had not admitted that Meyers had defamed A.C. to each and every class period Meyers had taught on 10/4/16.  So, instead of about 19-20 students Meyers had directly defamed A.C. to, it now was proven Meyers directly defamed A.C. to almost half the 8th grade class and also required each class to look up the N-word.  Meyers had called A.C a racist who said the N-word and made the supposition A.C. was absent that day due to suspension.  This

was intolerable and the Croziers demanded written apologies.

36. Olsen denied the Croziers any written formal apology from either himself, the school, its administrators or Meyers. Olsen wouldn't have a formal 8th grade meeting in the auditorium to speak to all and clear the air. Olsen again stated that "this would blow over" and offered A.C. to bring him names of individual friends who currently were harassing and bullying her and Olsen would speak to them about how Meyers was wrong.  Olsen denied the Croziers any information about the conversations that took place between only Olsen and the four students.

37. Between 10/11 and 10/17/16, A.C. attended school, but was fearful for her life.  The fear of physical altercations was real.  Emotionally, A.C. was under incredible duress having lost all trust in teachers and administrators.  A.C. was behind in school, worried about losing friends, angry about her teachers betrayal and weighed down with worry about what could happen next. Additionally, Olsen advised A.C. that if someone was bullying her or making her feel uncomfortable, that A.C. should immediately inform Olsen of that student's name and A.C. should go to the Dean's office and complete classwork there (in effect, missing out on important classroom instruction which continued to place A.C. behind and further the social isolation and harassment.)

38. The Croziers also have a special needs daughter, J.C., attending the middle school. The Croziers expressed to Olsen that direct supervision was necessary for J.C. to remain safe as the hallways would be fertile ground for others to harass and harm J.C. in light of Meyers' defamation of A.C. Olsen promised to discuss this with the Special Ed teachers. Ironically, it was the teachers again, not students, who dropped the ball on safely supervising J.C. later that year. J.C. and another special ed student were left behind at a field trip and had to be retrieved.  Then, later that year,  J.C. also was subjected to an unwarranted verbal assault on the bus by a student with a documented behavioral history.

39. On 10/18/16, A.C.'s parents met with Enid Schonewise and Olsen.  Although the Croziers had

17

left several messages both telephonically and in person for the Superintendent, Blane McCann, who had not attempted to return any call or communicate with the Croziers at all.  Instead, Enid Schonewise met with the Croziers and had reported that her investigation into Meyers' violations was complete and that Abby had done no wrong.  Schonewise also apologized for the district and stated that what Meyers did was "very wrong and shouldn't have happened".  Schonewise stated the "District is very sorry" but adamantly refused to go on record by offering an apology in writing or speaking to Meyers' classes.  All these solutions would have eradicated the harassment, discrimination, ostracization and bullying A.C. was continually encountering.  Instead, this negligence kept A.C.'s excellent character defamed and A.C. in direct harm and unprotected under the law.

40. Schonewise promised to review Meyers' curriculum choices as well, but again reiterated how "fickle middle schoolers are" and that this would "blow over within two weeks".  The Croziers insisted that this defamation would be life long, permanent and could rear its ugly head later in A.C.'s life by the power of the internet and social media.  The Croziers insisted that Meyer's malicious and willful decimation of A.C.'s excellent character would unfortunately follow A.C. throughout high school as she would be attending with all these students, but how unfair it was that Meyers got a fresh bunch of students to indoctrinate each year. The Croziers explained A.C. had stated that school now felt like a grey cloud was following her and she always had to "watch her back" and leave classes early to avoid encountering anyone in the hallway.  A.C. had to remove herself to the Dean's office to do schoolwork to avoid the sneering and bullying, so much she had started eating her lunch in the bathroom stalls to avoid anyone who could harm her.

41. By 10/31/16 A.C. still had not seen any progress.  Meyers' intentional destruction of A.C. was indelible and permanent.  Even though Olsen had spoken to previous friends of A.C.'s, it was clear that they were no longer A.C.'s friends and the Croziers realized A.C. needed to be removed from the school immediately due to the potential harm and impact that could befall A.C.

because of the Defendants' negligence. It is clear that the Defendants were more concerned about their own legal minimization of risk as opposed to A.C.'s safety and right to learn free from harm or danger.  Warren Crozier delivered a letter addressed to Mr. Olsen about immediately disenrolling A.C. from Westside Middle School.  Olsen then called Warren to discuss the letter and Warren conveyed that without actively addressing the Civil Rights violations, the school remained negligent and effectually continue to cause A.C. emotional and physical harm, distress, and continued violating A.C.'s right to equal protection under the law and education.  Paula Crozier notified the Nebraska Department of Education of an emergency enrollment authorization for homeschooling due to safety and civil rights violations and concerns.

42.  In early November, the Croziers were awakened by the Omaha Police Department at their home indicating that A.C. had been speaking to a suicide hotline about her experiences at Westside Middle School and how Meyers' actions had caused A.C. so much harm that A.C. had begun self harm and "wanted to kill herself".  The Croziers rushed A.C. to the emergency room where she was treated and released because the doctors didn't want A.C. to be further traumatized by other patients.  A.C. was referred to therapy which the Croziers followed up on.

43.  In February 2017, Mrs. Crozier received a call from another concerned parent.  The parent asked Paula why A.C. had left school and if it had anything to do with Meyers' political "rants" and "inappropriate assignments" and grade tampering.  The parent went on to discuss how she believed Meyers purposefully graded some of her daughter's schoolwork as missing even though she knew it had been turned in and that Meyers did this because her daughter is a conservative.  The parent was very concerned because these grades could keep her daughter from the honor roll. Additionally, this parent had told Paula Crozier that Meyers continued to assign inappropriate curriculum, a recent example was titled "A naked woman runs off with a on-duty crooked cop" and that her daughter was also told by Principal Olsen to leave the classroom and wait in the hallway when the student found Meyers' teaching offensive.  This is

just an example of how Schonewise and Olsen didn't review curriculum nor discipline and sanction Meyers as promised to the Croziers.  It is because of this cavalier and nonchalant attitude that the Croziers continue to know that Westside Community School District would still be unsafe for A.C. and that A.C.'s civil rights would continue to be violated due to incompetence and negligence.

Plaintiff incorporates here by reference paragraphs 1 through 43 supra, as if fully set forth herein.

Defendants' Censorship of Plaintiff's speech infringes Plaintiff's  First Amendment Right to Express Political Views.  Defendants' Defamation and willful negligence to protect Plaintiff from physical and emotional distress violates Plaintiff A.C.'s 14th Amendment Right to Equal Protection under the Law.

Westside Middle School  is subject to the policies adopted by the Westside Community School District. The District has adopted Standards of Student Conduct, which calls for all "Students of Westside Community Schools represent themselves, their families, their school, and the Westside Community. It is the intent of this Code of Conduct to promote responsible behavior among all students at school and in the community. This policy applies to all secondary and elementary students."  Westside Middle School Student Handbook, Standards of Student Conduct 2016–14 2 (2016).

Preserving students' freedom of speech and expression is an essential component of the broader

public educational mission. "[E]ducation has a fundamental role in maintaining the fabric of our society," and public schools are a "most vital civic institution for the preservation of a democratic system of government, . . . the primary vehicle for transmitting the values on which our society rests." Plyler v. Doe, 457 U.S. 202, 221 (1982) (citations omitted). See also Brown v. Bd. of Educ., 347 U.S. 483, 493 (1954) (public education is "is the very foundation of good citizenship. Today it is a principal instrument in awakening the child to cultural values, in preparing him for later professional training, and in helping him to adjust normally to his environment."). "That [schools] are educating the young for citizenship is reason for scrupulous protection of Constitutional freedoms of the individual, if we are not to strangle the free mind at its source and teach youth to discount important principles of our government as mere platitudes." West Virginia State Bd. of Educ. v. Barnette, 319 U.S. 624, 637 (1943). To that end, "vigilant protection of constitutional freedoms is nowhere more vital than in the community of American schools. . . . The Nation's future depends upon leaders trained through wide exposure to that robust exchange of ideas which discovers truth out of a multitude of tongues, rather than through any kind of authoritative selection." Tinker, 393 U.S. at 512 (citations omitted).


The State of Nebraska's Department of Education Code of Ethics for Professional Certificate Holders explain that a teacher must: "C. Principle II – Commitment to the Student Mindful that a profession exists for the purpose of serving the best interest of the client, the educator shall practice the profession with genuine interest, concern, and consideration for the student. The educator shall work to stimulate the spirit of inquiry, the acquisition of knowledge and understanding, and the thoughtful formulation of worthy goals. In fulfillment of the obligation to the student, the educator:
1. Shall permit the student to pursue reasonable independent scholastic effort, and shall permit the student access to varying points of view.
2. Shall not deliberately suppress or distort subject matter for which the educator is responsible.

21

3. Shall make reasonable effort to protect the student from conditions which interfere with the learning process or are harmful to health or safety.

4. Shall conduct professional educational activities in accordance with sound educational practices that are in the best interest of the student.

5. Shall keep in confidence personally identifiable information that has been obtained in the course of professional service, unless disclosure serves professional purposes, or is required by law."


The Professional Code of Conduct also emphasizes that the teacher's role is as:

 "Principle I – Commitment as a Professional Educator Fundamental to the pursuit of high educational standards is the maintenance of a profession possessed of individuals with high skills, intellect, integrity, wisdom, and compassion. The educator shall exhibit good moral character, maintain high standards of performance, and promote equality of opportunity. In fulfillment of the educator's contractual and professional responsibilities, the educator:

1. Shall not interfere with the exercise of political and citizenship rights and responsibilities of students, colleagues, parents, school patrons, or school board members."


By Defendant Meyers intentional defamation of Crozier's class participation and free speech, Meyers not only severely violated A.C.'s right to free speech, an inalienable right, but also clearly intentionally defamed A.C. with the intention of harm and decimation of A.C.'s character.  It is clear that Meyers uses her professional capacity as a "political activist" with reckless regard to her students' safety rather than her obligation to teach English as a Language Art.

That Westside Community Schools has agreed with the Crozier family that Elizabeth Meyers' actions were egregious, wrong, shouldn't have happened, and were unacceptable according to their own school policies is not in dispute.  That Westside agreed to review Meyers' curriculum choices to ensure they were appropriate for a 13 and 14 year old student is not in debate.  Clearly, Westside

Community Schools agreed with the Croziers that Meyers was far out of line and Meyers' actions

were wrong and "never should have happened" and did in fact violate A.C.'s civil rights.

It is also important to note that in a meeting in February 2017 with Westside Community School

District's own Assistant Superintendent Dr. Enid Schonewise and Director of Student Services Mr.

Alan Bone, it was clear the possibility of A.C.'s returning to school wasn't going to happen as the

school had done nothing to increase safety measures for A.C., and discipline Meyers as promised.

Nor did the school make any attempt to formally and publicly denounce Meyers' actions or

announce any formal apology or plan of action. Additionally at this meeting Bones, who proclaimed

to be Director of Student services, a job that entailed Head of Transportation duties and "doing

everything to help students be successful at school" admitted to not knowing much about A.C., or

about making school safe for A.C. Also, both Schonewise and Bones forbade that the Croziers, if

contacted by other parents about Meyers should  "stop talking to other families about Westside" in a

flimsy attempt to squelch Warren and Paula Crozier's conversations even though those

conversations were unsolicited. Furthermore, Bones called Mr. Crozier a "conspiracy theorist" and a

"7th grader" when Crozier was relating true safety concerns for A.C. such as the school's flagrant

disregard for a videotaped physical fight between one of A.C.'s previous friends whereby a teacher/

security school employee watched it from about 3 feet away and did nothing to stop it.  Additionally,

there was a second incident where a girl brought a knife to school with the intention of stabbing

another student and both incidents occurred on school grounds.  While both of these altercations

didn't directly involve A.C., the Croziers believed that the school environment clearly was unsafe for

many students including A.C., and lacked the appropriate leadership to ensure any of its students'

safety.

Mr. Bones became increasingly agitated at Mr. Crozier and lied  in answering Mr. Crozier's

questions about how Bones was making the school safe for students.  When Bones stated that the

knife never entered school grounds and that students were never in harm's way, Crozier simply asked how the student arrived at the school that day and that the student arrived possibly by bus. Additionally Crozier cited a news article in which a student quoted that they saw the knife while between classes at a locker inside the school.  Bones became incredibly irate and started to verbally attack Crozier which only further cemented that Westside is woefully and willfully unprepared to keep its students safe and there was no way A.C. nor her sister Jamie could continue at that school the following year.

---

IV.    **Injuries**

If you sustained injuries related to the events alleged above, describe your injuries and state what medical treatment, if any, you required and did or did not receive.

Elizabeth Meyers, acting under color of state law willfully and maliciously violated two civil rights  and conducted herself in a manner that caused significant injury to our daughter, AC and additionally, Mr. Russ Olsen, Dr. Enid Schonewise and Dr. Blane McCann also acting under color of state law, neglected to act to protect A.C. from the willful harm Elizabeth Meyers inflicted and thusly also caused significant injury to our daughter.

1. A.C. has sustained permanent injuries to her reputation, character, body and mind.  A.C. has lost all trust in teachers and administration at schools.  She began self-harm and suffered emotional distress, anxiety and depressive thoughts.  She had to be immediately removed from the school environment in order to be under the watchful eye of her parents to ensure not only her safety from students at Westside, but also under 24 hour continual suicide watch.  The Croziers had to lock up any and all items they could think might potentially be used  to commit suicide such as medications, kitchen knives, razors because their blades could be removed and used, lotions, soaps, cleaning

---

supplies, belts and ropes.  The constant 24 hour suicide watch meant A.C. was not allowed to leave the house by herself to skateboard or run, something that brought her great joy before; A.C. was supervised in the shower, had to sleep in view of her parents, couldn't attend social events alone and security systems were placed in the home.  Because of Meyers' intentional heinous abuse A.C. sustained, she was twice in the act of potentially taking her life when the Omaha Police Department intervened and appeared at the Plaintiff's home.  A.C. had trips to the ER for these suicidal thoughts, self harm and anxiety.  A.C. had to attend therapy which only recounted the abusive environment and negligence and forced A.C. to relive and recall the pain and school abuse which stagnated her potential recovery.

Presently, A.C. continues to struggle with trusting teachers and asking for guidance in classes.  A.C. no longer wants to pursue her career in law enforcement as previously published in a Omaha World Herald article in May 2016, as she is terrified that the defamation will follow her and cause imminent physical danger.  A.C. avoids posting to social media unless the post is thoroughly scrutinized in fear fear of reprisal, danger and harm.  A.C avoids community outings at typical times for fear of encountering Westside students.  A.C. scans every store, restaurant or social gathering for potential harmful encounters and immediately requests to wait in the car or that we leave so as to protect herself from students at Westside.  A.C. constantly wants to "move out of Omaha" to avoid potential harm.  The Croziers took many weeks in 2017 and 2018 to search for employment and housing on the coasts in an effort to help A.C. live a typical life outside of fear and harm.

During the summer of  2017, A.C. received a threatening social media message stating, "You're a racist."  As recently as September 7, 2018, A.C. again encountered a previous classmate on an airline trip to Denver;  a student from Westside who sneered at A.C. enough to cause A.C. to become anxious, worried and fearful.  A.C. hides her Westside past from her current classmates and refuses to

speak when called upon in classes when possible to avoid any further harm and injury. A.C. has

attended therapy and will continue to need therapy to cope with the injuries inflicted upon her by the

people we entrusted to keep her safe and to help her learn… her teachers, principal and

administration. Furthermore, the Croziers have sustained physical, monetary and emotional damages

as well through financial losses in business, employment and home as a direct result of having to be

on 24 hour suicide watch for their daughter, all caused by Elizabeth Meyers' intentional 1st

amendment violations followed by Meyers' hateful, slanderous rhetoric perpetrated against A.C. which

violated A.C.'s 14th amendment.

---

## V.    Relief

State briefly what you want the court to do for you. Make no legal arguments. Do not cite any cases or statutes.

If requesting money damages, include the amounts of any actual damages and/or punitive damages claimed for the acts alleged. Explain the basis for these claims.

Wherefore, Plaintiff Abby Crozier, Minor Plaintiff, prays for judgment as follows:

1. Plaintiff respectfully requests that this Court enter a declaratory judgment stating that

Defendants have violated the First Amendment to the United States Constitution.

2. Plaintiff respectfully requests that this Court enter a preliminary and permanent injunction

enjoining Defendants from enforcing the Westside Community School District guidelines in teaching in

classrooms, and enforcing teacher discipline in teacher bullying and defamation in a manner

inconsistent with the First Amendment to the United States Constitution, including an order providing

that Plaintiff A.C., Minor Plaintiff, and all other students are  allowed to present her views and formulate

opinions in a truly "safe space" of educational discovery.

3. Plaintiff respectfully requests an award of nominal damages in the amount of $2,500,000.00

against Defendants for violating her constitutional rights pursuant to 42 U.S.C. § 1983 and any other

applicable law.  We are seeking $2,500,000 of which is $847 Therapy, $15,000 moving expenses and

$2,488,153 in future medical damages, hospitalizations and therapy for anxiety, depression and other

possible related injuries, and punitive damages. Plaintiffs spent several thousand dollars attempting to

find another state and employment in which to live to remove A.C. from Omaha.  Plaintiffs took business

losses directly related to the stress of 24 hour suicide watch and are due restitution.  A.C. suffered

permanent scarring to her body and mind, and continues to have anxiety and issues stemming from

Defendant's actions and negligence.

4. Plaintiff respectfully requests costs of suit, including reasonable attorneys' fees under 42

U.S.C. § 1988 and any other applicable law, and all further relief to which Plaintiff may be justly entitled.


## VI.   Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge,
information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass,
cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a
nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have
evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable
opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the
requirements of Rule 11.


## A.   For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case—related papers
may be served.  I understand that my failure to keep a current address on file with the Clerk's Office may result
in the dismissal of my case.

Date of signing:      09 - 17 - 2018

Signature of Plaintiff

Printed Name of Plaintiff        Warren Crozier


Date of signing:      9-17-18

Signature of Plaintiff

Printed Name of Plaintiff        PAULA M CROZIER

27

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Warren & Paula Crozier on behalf of minor child A.C. | Westside Comm School District et al. |

| (b) County of Residence of First Listed Plaintiff **Douglas** | County of Residence of First Listed Defendant **Douglas** |
|---|---|
| *(EXCEPT IN U.S. PLAINTIFF CASES)* | *(IN U.S. PLAINTIFF CASES ONLY)* |
| | NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED. |

| (c) Attorneys *(Firm Name, Address, and Telephone Number)* | Attorneys *(If Known)* |
|---|---|

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question *(U.S. Government Not a Party)*
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☒ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal | ☐ 376 Qui Tam (31 USC |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Product Liability | | 28 USC 157 | 3729(a)) |
| ☐ 140 Negotiable Instrument | Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| & Enforcement of Judgment | Slander | Personal Injury | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted | Liability | ☐ 368 Asbestos Personal | | ☐ 835 Patent - Abbreviated | ☐ 460 Deportation |
| Student Loans | ☐ 340 Marine | Injury Product | | New Drug Application | ☐ 470 Racketeer Influenced and |
| (Excludes Veterans) | ☐ 345 Marine Product | Liability | | ☐ 840 Trademark | Corrupt Organizations |
| ☐ 153 Recovery of Overpayment | Liability | **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | ☐ 371 Truth in Lending | Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ |
| ☐ 190 Other Contract | Product Liability | ☐ 380 Other Personal | ☐ 720 Labor/Management | ☐ 863 DIWC/DIWW (405(g)) | Exchange |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Property Damage | Relations | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | ☐ 385 Property Damage | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| | ☐ 362 Personal Injury - | Product Liability | ☐ 751 Family and Medical | | ☐ 893 Environmental Matters |
| | Medical Malpractice | | Leave Act | | ☐ 895 Freedom of Information |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | Act |
| ☐ 210 Land Condemnation | ☒ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement | ☐ 870 Taxes (U.S. Plaintiff | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | Income Security Act | or Defendant) | ☐ 899 Administrative Procedure |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate | | ☐ 871 IRS—Third Party | Act/Review or Appeal of |
| ☐ 240 Torts to Land | ☐ 443 Housing/ | Sentence | | 26 USC 7609 | Agency Decision |
| ☐ 245 Tort Product Liability | Accommodations | ☐ 530 General | | | ☐ 950 Constitutionality of |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 535 Death Penalty | **IMMIGRATION** | | State Statutes |
| | Employment | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 446 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | |
| | Other | ☐ 550 Civil Rights | Actions | | |
| | ☐ 448 Education | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - | | | |
| | | Conditions of | | | |
| | | Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 USC § 1st Amendment & 14th Amendment violations

Brief description of cause:
Freedom of speech violation, Equal Protection 112 USC 1983

## VII. REQUESTED IN COMPLAINT:

- ☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.
- DEMAND $
- CHECK YES only if demanded in complaint:
- JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*  JUDGE _____  DOCKET NUMBER _____

DATE **9-17-18**   SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____